[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 11180
This action, by writ and complaint, claiming a dissolution of marriage and other relief, as on file, came to this court on May 29, 1997, with a return date of June 10, 1997, and thence to later dates when the defendant appeared through counsel and filed a cross complaint. Both parties appeared for a limited contested trial which was heard on September 10, September 11 and September 17, 1998. The court heard closing arguments on September 22, 1998.
Having heard the evidence the court finds as follows. The plaintiff, whose birth name was Sally Hoag and the defendant were married on April 22, 1991 in Torrington, Connecticut. The plaintiff has resided continuously in the state of Connecticut for twelve months prior to the date of the complaint. The plaintiff and defendant have one minor child who is issue of their marriage: Sofia Iseppi, born September 9, 1994. No other minor children have been born to the plaintiff since the date of the marriage. Neither party has received support from the state of Connecticut. The court has jurisdiction over the parties and the marriage.
At trial, the parties presented proposed orders to the court, which represented their agreement as to certain issues. The court heard testimony in order to decide the outstanding issues on which there was no agreement.
The plaintiff wife is 39 years old and in good health.[1]
She is employed as a waitress at DeFranco's Restaurant in Litchfield, three evenings a week, from 5:30 p.m. to 11:00 p.m. and she brings home $251.00 a week, including tips. Her education includes one year of college, when she took business and secretarial courses. From 1978-1980, she worked as an executive secretary on Wall Street. Thereafter, she worked in a beauty salon in Arizona as a manicurist and manager. In 1990, she begun working at the Torrington Company as a clerk and secretary, and when she left that employment in 1993, she was making approximately $435.00 weekly. She has no pension or retirement plan. She is covered by the defendant's health insurance. She has custody of two minor children who are issue of a prior marriage.
The defendant husband is 41 years old and in good health. Since 1985, he has been employed at the Torrington Company as a senior systems programmer, and he brings home $815.00 a week. CT Page 11181 Prior to that, he had worked at the Hartford as a computer programmer. Throughout his life he worked in his father's masonry business. The defendant received degrees from Hartford State Technical College and Central Connecticut State University in computer science. He has a pension plan valued at $16,877.25 as of August 1998 and a 401K plan with a balance of $84,947.11 as of June 30, 1998.
At the date of the marriage, the parties and plaintiff's children moved into a house on Breezy Hill Road in Torrington owned by the defendant. The defendant had purchased the house in 1981 for $61,500.00. Prior to the marriage, two additions were made to their house, and after the marriage another room was added. In 1994, the parties purchased a house on Mikelin Drive in Torrington for $180,000.00, and that house became the marital home. An addition was made to that home in 1994. The defendant sold the Breezy Hill house in August 1996 for $175,000.00.
At the time of this marriage; in 1991 the plaintiff possessed no assets other than an automobile, $500.00 and personal household property. She did have liabilities of approximately $7,300.00. At the time of the marriage the defendant had no liabilities and owned the Breezy Hill house with no mortgage. His liquid assets at that time totaled approximately $129,500. He had two IRA's, totaling approximately $18,700, and a 401K plan with a balance of approximately $2,388. In addition, the defendant had personal household property, including an automobile, furniture, and tools at the Breezy Hill house.
During the first year of marriage, the parties maintained separate checking accounts, and the plaintiff would deposit her entire paycheck into her checking account to pay off her pre-marital liabilities and other expenses for her children. After about a year, the defendant added the plaintiff's name to the money market and checking accounts out of which household expenses were paid. The plaintiff then began depositing her paycheck into the joint account until she stopped working 15 months later. When the parties purchased the Mikelin Drive house they signed a promissory note to the defendant's father for $100,000.00 plus interest. The defendant's father lent them the money for the house purchase. The loan has not been repaid.
The plaintiff is steadfast in her claim that the sole cause of the breakdown of the marriage is the defendant's personality and conduct. While the defendant acknowledges that his inability CT Page 11182 to express emotions may have contributed to the breakdown of the marriage, the plaintiff unfortunately accepts no responsibility. It became clear to the court over the days of testimony that the plaintiff's anger, impatience, and contempt for the defendant also contributed to the marital breakdown. During this relatively short marriage, the parties experienced unfortunate events beyond their control that strained their marriage further. The court finds that neither party is more responsible than the other for the irretrievable breakdown of this marriage.
During the marriage in October 1992, the parties purchased outright a 1992 Ford Explorer sports utility vehicle for approximately $24,600.00, out of a joint account. This vehicle is used exclusively by the plaintiff. The parties vacationed in Myrtle Beach, Cape Cod, the Bahamas and Texas. Notwithstanding the plaintiff's complaints to the contrary, throughout the marriage, the defendant bought gifts for the plaintiff. Further he supported her children financially and participated in their upbringing. During the marriage, the plaintiff was awarded $12,367 as the result of a personal injury lawsuit. After the plaintiff notified the defendant that she was seeking a divorce he closed all of the joint accounts in May and June 1997. Neither party conducted an appraisal of the marital home at Mikelin Drive, and neither produced any probative evidence of the value of the marital home beyond the 1994 purchase price and the fact that a 10 x 23 room was added. The court finds that the value of the marital home is $170,000.
The court has considered criteria set forth in Connecticut General Statutes §§ 46b-81 and §§ 46b-82 in reaching its decision as to the disputed issues.
Accordingly, the court enters the following orders:
1. A decree may enter dissolving the marriage on the grounds of irretrievable breakdown.
2. The parties shall have joint legal custody of their child, Sofia. The child's primary residence will remain in the town of Torrington.
The defendant father shall have parenting time three weekends per month. On two of the weekends, father's time shall be from Friday 3:30 p.m. to Sunday at 7:00 p.m. During one weekend per month, the defendant's parenting time shall be from Friday 3:30 CT Page 11183 p.m. to Sunday at 1:00 p.m. The longer periods shall occur on the second and fourth weekends of each month.
The defendant shall have two weekday periods to spend with Sofia to include every Tuesday 3:30 p.m. overnight to Wednesday at 10:00 a.m. The plaintiff shall pick up the child from the paternal grandparent's home in the morning. If Riccardo or Elsa Iseppi are not available, the parties shall make alternative plans for this transition. In addition, the defendant shall have every Thursday from 3:30 p.m. to 8:00 p.m. to spend with Sofia.
The plaintiff shall assume the balance of the parenting time including the one weekend each month. If the parties cannot agree on a specific weekend, the third weekend shall be used for this purpose. For the four months in which there are five weekends, the parties shall have Sofia for two of those four weekends.
The parties shall discuss additional parenting time or the need to adjust the schedule at least forty-eight hours prior to the time period. The parties shall be given the first option to care for Sofia if either is unavailable during their parenting time for more than eight hours.
Each party shall have one week of exclusive summer vacation time with Sofia. The specific week shall be agreed upon by April 15th of each year.
Holiday Schedule:
A) The major holidays of Thanksgiving, Easter and the child's birthday shall be shared on a yearly basis with the goal of Sofia spending time with both sets of extended family. As the defendant may have work obligations during these holiday periods, the parties shall discuss the pick up and drop off times as soon as schedules are available. If the parties cannot arrive at an agreement, the following rotating plan shall be used on a yearly basis:
 1998: The plaintiff's holiday time should be from 9:00 a.m. to 2:00 p.m.
 The defendant's holiday time should be from 2:00 p.m. to 7:00 p.m.
 1999: The defendant's holiday time should be from 9:00 a.m. CT Page 11184 to 2:00 p.m.
 The plaintiff's holiday time should be from 2:00 p.m. to 7:00 p.m.
The Christmas Holiday shall be alternated yearly using the following schedule:
 1998: Plaintiff: Christmas Eve 4:00 p.m. until Christmas Day at 11:00 a.m.
 Defendant: Christmas Day 11:00 a.m. to the resumption of the regular parenting schedule.
 1999: Plaintiff: Christmas Eve 4:00 p.m. until Christmas Day 11:00 a.m.
 Defendant: Christmas Day 11:00 a.m. to the resumption of the regular parenting schedule.
Mother's and Father's Day shall be spent with the appropriate party. If this day happens to land within the other party's scheduled time then arrangements shall be made to switch weekends.
The remaining minor holidays should be shared or alternated by agreement of the parties. The parties shall discuss the various options at least one week prior to the time period. If an agreement is not reached, the parents shall use the schedule for Easter, Thanksgiving and Sofia's birthday.
The parties shall share important information concerning Sofia in a timely fashion, including but not limited to decisions regarding which school Sofia will attend.
The parties shall be responsible to make certain that Ernest Iseppi and Albert Carbajal have no contact with each other.
The parties shall make no derogatory remarks or engage in other negative behavior toward each other in front of the child.
The plaintiff shall not allow Sofia to be alone at any time with the plaintiff's son Albert Carbajal.
3. The defendant shall pay to the plaintiff $150 per week for CT Page 11185 the support of the minor child Sofia. This amount represents a deviation downward from the child support guidelines. The amount indicated by the guidelines is $177.00 weekly. The court further finds that the application of the guidelines here would be inequitable and inappropriate because of the provision of alimony it has entered, the plaintiff's earning capacity and the amount of parenting time the defendant is spending with Sofia. See Connecticut State Agency Reg. § 46b-215a-3(b)(1), (5) and (6). This child support obligation shall be secured by a contingent wage withholding order pursuant to General Statutes § 52-362(b).
4. The defendant shall maintain health insurance for the minor child Sofia and pay any uninsured medical expenses on behalf of the minor child. The provisions of General Statutes § 46b-84(d) are hereby incorporated into these orders regarding health insurance.
5. The defendant shall pay the plaintiff $100.00 a week as alimony for a period of three years. This order is non-modifiable as to term and shall sooner terminate upon the remarriage of the plaintiff, the death of either party, or the plaintiff's cohabitation within the meaning and intent of General Statutes § 46b-86(b). In fixing the term of alimony, in addition to the criteria of General Statutes § 46b-82, that court has considered the age of Sofia, that Sofia will be entering first grade in two years and that in three years the plaintiff should have been able to obtain full time employment.
6. The defendant shall maintain the plaintiff on his health insurance plan pursuant to COBRA at his cost for the maximum period allowed but in no event shall that period exceed three years. This payment shall be considered as alimony for tax purposes.
7. Within thirty days of the date of this judgment, the plaintiff shall quitclaim to the defendant all of her interest in the real estate known as 131 Mikelin Drive, Torrington, Connecticut. The defendant shall attempt to procure a release from his parents Riccardo and Elsa Iseppi releasing the plaintiff from her liability under a promissory note date August 25, 1994. If he is unable to obtain a release, the defendant shall indemnify and hold the plaintiff harmless from this liability. At the time of the plaintiff's transfer of her interest, the defendant shall pay to the plaintiff, $35,000 representing one CT Page 11186 half the equity in the home. In addition to the $35,000, the defendant shall pay the plaintiff $12,000 at the time of the transfer.
8. Each party shall assume the liabilities listed on their respective financial affidavits and shall indemnify and hold the other harmless therefrom. The plaintiff lists a total debt of $9,990.00 and the defendant lists only the joint debt of $100,000 plus interest owed to his father.
9. The defendant shall transfer to the plaintiff pursuant to a Qualified Domestic Relations Order $41,280 which represents one half of the proceeds of his 401K plan that have accrued since the date of the marriage to the date of this judgment. Counsel for the plaintiff shall prepare the QDRO.
10. The plaintiff shall retain all right, title and interest and possession of the 1992 Ford Explorer. The Defendant shall retain all right, title, interest and possession of the 1989 Nissan Maxima.
11. The defendant shall maintain the life insurance policy currently in effect and shall designate Sofia as the beneficiary by trust until she reaches the age of 18.
12. The other tangible personal property now in possession of the plaintiff and the Tiffany kitchen lamp, Christmas tree, Christmas tree ornament, blue desktop phone and office table shall be wholly hers, free of any claim or demand by the defendant. Other than the items listed in the preceding sentence and the orders contained in the preceding paragraphs, all tangible personal property now in the possession of the defendant and the assets listed on his financial affidavit shall be his free of any claim or demand by the plaintiff.
13. Counsel fees are awarded to neither party.
14. The plaintiff's birth name, Sally M. Hoag, is restored to her.
DiPentima, J.